Theresa SCOZZAFAVA, Plaintiff,

v.

UNITED STATES of America, Defendant.

Mary SPRINGSTEAD and Wesley J. Springstead, Plaintiffs,

v.

UNITED STATES of America, Defendant.

United States District Court
S. D. New York.
May 18, 1961.

Memorandum on Government's Motion to Review Decision
Jan. 4, 1961.

and such judicial district shall be regarded as the residence of such corporation for venue purposes."

**44**

Kopald & Haft, Highland Falls, N. Y., Myron I. Mandel, Highland Falls, N. Y., of counsel, for plaintiffs.

S. Hazard Gillespie, Jr., U. S. Atty., New York City, Robert E. Scher, Asst.
U. S. Atty., New York City, of counsel, for the United States of America.

HERLANDS, District Judge.

Plaintiff Theresa Scozzafava (60 Civ. 823) and plaintiffs Mary Springstead and Wesley J. Springstead (60 Civ. 824) seek to recover the rental value of property owned by them and occupied by the United States Government. Defendant moves, in each case, pursuant to Rule 12 (b) (6), Fed.Rules Civ.Proc. 28 U.S.C.A., to dismiss those portions of the complaints that seek to recover rent for the Government's occupancy of the water over certain portions of the bed of the Hudson River owned by plaintiffs. The factual and legal issues in each case are essentially the same; and, for purposes of this motion, the cases will be treated as one.

Plaintiffs are owners of the river bed and adjacent lands along the Hudson River, at Jones Point, New York. Since 1946, the United States (through its Maritime Commission and Department of Commerce) has stationed a large number of deactivated commercial vessels in the Hudson River, off the general area of Jones Point. These vessels are part of the so-called "moth-ball" fleet.

For purposes of this motion, it is conceded that certain of the Government's vessels lie in water over portions of the river bed to which plaintiffs hold title.

The Government argues that plaintiffs are precluded from seeking compensation for the asserted reason that the stationing of the vessels in the Hudson River represents an exercise of the Government's sovereign power to regulate commerce and navigation.

The decisive issue is whether the owner of the river bed of a navigable stream may demand rent from the United States for the storage of the latter's deactivated vessels in the stream.

The title of the owner of fast land, on the shore of a navigable waterway, to the bed of the river is at best a qualified one. It is subordinate to the public right of navigation and to the

power of Congress over the improvement of navigable rivers. United States v. Chandler-Dunbar Water Power Co., 1913, 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063.

The United States may improve its navigable waters in the interest of navigation without liability for damage resulting to private property within the bed of the stream. United States v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 1941, 312 U.S. 592, 61 S.Ct. 772, 85 L.Ed. 1064. See United States v. Kansas City Life Insurance Co., 1950, 339 U.S. 799, 70 S.Ct. 885, 94 L.Ed. 1277.

■ The power to regulate navigation is derived from the power to regulate commerce. U.S.Const. Art. I, Sec. 8; Gilman v. City of Philadelphia, 1865, 3 Wall. 713, 70 U.S. 713, 18 L.Ed. 96.

■ The Government's immunity against liability for the taking of private property within the bed of a navigable stream in aid of navigation is not predicated upon the broad constitutional power to regulate commerce but upon a different legal concept or premise. United States v. Kansas City Life Insurance Co., supra. Lands below the high-water mark are, as a matter of law, subject to a dominant servitude in the interest of navigation. The assertion of that interest by the Government does not call for compensation because the Government is not "taking" something that the property owner had in the first place. United States v. Willow River Power Co., 1945, 324 U.S. 499, 65 S.Ct. 761, 89 L.Ed. 1101. When title to the submerged land was acquired by the owner, his title was and is subject to the power of Congress to deepen the water or to use the land for any structure which, in its judgment, may be required in the interest of navigation. Lewis Blue Point Oyster Cultivation Co. v. Briggs, 1913, 229 U.S. 82, 33 S.Ct. 679, 57 L.Ed. 1083. The Government's immunity against liability is based on the Government's privilege, which is the jural correlative of the servitude to which the land is subject. United States v. Kansas City Life Insurance Co., supra.

The critical issue is whether the Government's acts are in aid of navigation. If they are, then damage to the owner of the river bed is not compensable, notwithstanding that the Government's acts may serve some other purpose as well. United States v. Commodore Park, Inc., 1945, 324 U.S. 386, 65 S.Ct. 803, 89 L.Ed. 1017.

■ If, however, the storage of the vessels was not in aid of navigation, the Government's acts would fall outside the scope of the servitude and the owners whose property was taken for a public use must be compensated. In the exercise of its power to regulate commerce, Congress may not override the constitutional requirement that private property shall not be taken for public use without just compensation. U.S.Const. Amend. V; Scranton v. Wheeler, 1900, 179 U.S. 141, 21 S.Ct. 48, 45 L.Ed. 126.

■ This Court would not review a congressional determination, as embodied in a statute, that a given project is or is not in aid of navigation. See United States v. Chandler-Dunbar Water Power Co., supra. The authority for the establishment of the national defense reserve fleet, of which the vessels in question are a part is to be found in The Merchant Ship Sales Act of 1946, 50 U.S.C.A. Appendix, §§ 1735–1746.

■ The issue whether vessels of this fleet were placed in the Hudson River to aid navigation or for some other purpose is a factual one, not to be decided on this motion to dismiss.

Motion denied. So ordered.

### Memorandum on Government's Motion to Review Decision

Upon motion of the Government, the Court has reviewed its decision. It has examined the further memorandum and papers submitted by defendant; and, in addition to the authorities cited in its original opinion, the Court has considered the following cases: Greenleaf Johnson Lumber Company v. Garrison, 1915, 237 U.S. 251, 35 S.Ct. 551, 59 L.Ed. 939; United States v. Gerlach Live Stock

**46**

Co., 1950, 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231; United States v. Twin City Power Co., 1956, 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240; United States v. Virginia Electric & Power Company, 1961, 361 U.S. 624, 81 S.Ct. 784, 5 L.Ed. 2d 838; Carumbo v. Cape Cod S. S. Co., 1 Cir., 1941, 123 F.2d 991; United States v. 11.48 Acres of Land, 5 Cir., 1954, 212 F.2d 853; West v. United States, 3 Cir., 1958, 256 F.2d 671, affirmed 1959, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161; United States v. 412.715 Acres of Land, D.C.N.D.Cal.S.D.1943, 53 F.Supp. 143; Blake v. United States, D.C.E.D.Vir. Newport News Div.1960, 181 F.Supp. 584.

Upon such review and examination, the Court adheres to the decision set forth in its original opinion, dated January 4, 1961.